UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DAVID WILLIAMS, on behalf of himself and all others similarly situated,

Case No. 15-cv-5610 (AKH)

Plaintiffs,

-against-

EPIC SECURITY CORP.,

Defendant.
----------------------------------------------------------X

## DECLARATION OF SELWYN FALK IN OPPOSITION TO PLAINTIFF'S MOTION TO CERTIFY THIS CASE AS A COLLECTIVE ACTION

1. I submit this Declaration in opposition to Plaintiff David Williams' motion to certify this case as a collective action. I am Vice President of EPIC Security Corp. ("EPIC"). I have personal knowledge regarding the Plaintiff's employment, the factual background, as well as the claims that he asserts against EPIC in this case.

2. The Plaintiff alleges that EPIC failed to pay him overtime wages in violation of the Fair Labor Standards Act, as well as New York State's Labor Law. As set forth herein, the Plaintiff was not hired as a "security officer driver". The Plaintiff simply used a company vehicle to commute to his assigned work site. It was the Plaintiff's choice to use the company vehicle, as opposed to using mass transit. Thus, the only employees that would be similarly situated to the Plaintiff would be those who accepted EPIC's offer to use a company vehicle to commute to their work sites. Such time is not compensable, especially under the circumstances in this case where the Plaintiff simply used EPIC's vehicle to travel to his work site rather than taking public transportation. Thus, there is no basis to certify this case as a collective action.

3. On or about February 6, 2013, the Plaintiff sought work at EPIC as a security guard. During his interview with the company personnel manager, Plaintiff presented a valid New York State Security Guard Registration Card, and a valid NYC Fire Department F01 Fire Guard Certificate.

4. Prior to his hiring, the Plaintiff was advised that a position as a lobby Security Guard/Fireguard was open in Far Rockaway. The Plaintiff was also advised of the start date, salary, and job duties. At no time was the Plaintiff advised that he was being hired as a "Security Officer Driver", nor that the position he would be filling required him to operate a vehicle, as the post orders did not require a motor vehicle. Plaintiff was not required to possess a New York State Driver License for this position.

5. As part of the interview process, the Plaintiff was further advised that the employer does not pay for commute time to the work site as it was the employee's responsibility to arrange for his/her own transportation to work. Plaintiff was further advised that upon arrival to the worksite all uniformed personnel must be in uniform at the start of their shift, as indicated in the form P-65, referred to by the claimant in his affidavit. The Plaintiff accepted the position and was hired on February 6, 2013.

6. The Plaintiff then completed the personnel paperwork and presented a New York State Driver License and Social Security Card as identification for the required I-9 (Immigration) Form. The Plaintiff was also issued a company uniform.

7. During the hiring process, the Plaintiff was directed to see the scheduling manager in order to get his work schedule. The Plaintiff was specifically told that he would be working as a Security Officer/Fireguard at Daytop Village Residence, 316 Beach 65 St., Far Rockaway NY 11692.

2

The client, Daytop Village Residence, where the Plaintiff was assigned effective February 7, 2013, had contracted EPIC to supply security guards with FDNY Fire Guard Certification, as the site fire suppression system was under repair. At no time was the Plaintiff told that he would be required to drive a company vehicle to work.

8. The Plaintiff was given a work schedule effective February 7, 2013. That work schedule was denoted on a document titled "SECURITY OFFICER DIRECTIONS TO THE WORKSITE". A copy of this document is attached hereto as Exhibit **"A"**. Said "SECURITY OFFICER DIRECTIONS TO THE WORKSITE" and schedule was accepted and signed for by the Plaintiff. The directions to the worksite specifically listed the SUBWAY AND/OR BUS DIRECTIONS TO WORK as: "A TRAIN TO ROCKAWAY BLVD., TAKE Q53 BUS TO ROCKAWAY BEACH/BEACH 96 ST, TAKE Q22 BUS TO BEACH CHANNEL/BEACH 67". The "SECURITY OFFICER DIRECTIONS TO THE WORKSITE" did not indicate, direct, or order the Plaintiff to report to the offices of EPIC Security Corp and pick-up a company vehicle for transportation to the worksite, nor does the "SECURITY OFFICER DIRECTIONS TO THE WORKSITE" indicate in the section titled "POST ORDERS, that a patrol vehicle is required at the worksite.

9. Due to disrupted service on the A train in February 2013 as a result of Hurricane Sandy, the Plaintiff was advised that the A Train was not going straight through to Far Rockaway and that he would have to get off at the A Train Rockaway Blvd Station and then take the alternative bus service (Q53) Bus was from Cross Bay Blvd. and Liberty Ave. and change again to the Q22 at Rockaway Beach and Beach 96th Street.

3

10. The scheduling manager noted from the Plaintiff's personnel records that he possessed a NYS Driver License, which he had presented as ID for the I-9 Form. For the Plaintiff's benefit and convenience, due to the disruption in A Train Service, the Plaintiff was offered the option of following the public transportation route to his work site, or, as an alternative, he could come to the company office and utilize a company vehicle to commute to the work site.

11. At no time was this offer required as part of his job duties, and the Plaintiff could have decided at any time not to accept the offer. At no time would his decision not to use the EPIC vehicle as an option to get to work, have affected his employment, nor result in any disciplinary action, nor removal from his assignment. In fact, the records show that the Plaintiff elected not to utilize the company vehicle as an optional mode of transportation to work from February 20, 2013 through his last day of work, which was February 28, 2013. At no time did his decision result in any disciplinary action, removal from his assignment or termination from his employment. Furthermore, the Plaintiff was not required to utilize the company vehicle as part of his security duties at the work site.

12. All EPIC vehicles, except those garaged at work sites, are stored at the garage located near the EPIC office. For security reasons, all persons retrieving an EPIC vehicle in Manhattan are required to present a release form from the office that is presented to the garage attendant. EPIC vehicles are not stored on the public street in the area of the EPIC office.

13. As part of the agreement for the Plaintiff to utilize the EPIC vehicle for his personal commute to the work site, the Plaintiff was advised that EPIC would be paying for any gas used, but requested that the plaintiff gas up the vehicle (on the company account) on his return from the work site. According to the scheduling manager, the Plaintiff agreed.

14. With regards to the commute with other employees, the Plaintiff was advised that there were other employees who had also accepted an offer to commute to work using an EPIC vehicle. After speaking with the Plaintiff and the other employees it was agreed that they would share the commute, and that the employees would meet at the EPIC office. The Plaintiff was never ordered or directed to pick-up employees at their homes. As entered by the Plaintiff on the "Vehicle Use Report" submitted to EPIC by the Plaintiff, no such activity occurred. If any such activity occurred it was an arrangement between employees without the company's authorization. At no time was the Plaintiff "ordered to fulfill a host of duties before signing in at the worksite".

15. Any such orders would have been denoted on the Security Officers Directions to the Worksite or the site Operations Order. The Plaintiff was not asked to divert from the most direct route while going to or from 316 Beach 65 St., Far Rockaway NY 11692. If the Plaintiff did divert from the most direct route to 316 Beach 65 St., Far Rockaway NY 11692, this was done on his own accord and not at the direction of the employer.

16. The Plaintiff's statement that he was required to change into his uniform before being handed the keys to the EPIC SUV is not correct. Contrary to the Plaintiff's statement, no keys are kept at the EPIC office and he was not handed any keys by another EPIC employee.

17. All vehicle keys are kept inside the EPIC vehicles in control of the garage. Furthermore, EPIC employees are not required to be in uniform at the EPIC office unless they are on duty. The plaintiff's stop at the EPIC office was part of the method of commute that he elected to do. Therefore, he was not on duty or required to be in uniform. It is not unusual for EPIC employees to change into their uniforms at home before their commute to work, and nobody told him that he was required to be in uniform before his shift began at Daytop Village.

5

18. With regards to the Plaintiff's statement that the P-65 contained instructions "requiring me and my colleagues to bring food and drink (i.e., no meal breaks)", as the Plaintiff was assigned to a one-employee shift, in accordance with Meal Period Guidelines - Section 162 of the New York State Labor Law, it was requested that the Plaintiff eat on the job without being relieved. The Plaintiff accepted this arrangement, and he was paid straight through for the whole shift. As the post assignment was during the aftermath of Hurricane Sandy, the employer was not aware of any food outlets that were open in the vicinity of 316 Beach 65 St., Far Rockaway NY 11692. Therefore EPIC believed it would a good idea to recommend to the plaintiff to bring food and drink with him to the worksite.

19. The Plaintiffs last day of work with EPIC was February 28, 2013. During his brief employment period, the Plaintiff only worked at Daytop Village, the assignment he was specifically hired for.

20. Plaintiff voluntarily resigned on March 5, 2013 stating that he "got a new job close to home at a higher salary."

21. There is no basis to certify this case as a collective action because the only employees that would be similarly situated to the Plaintiff would be those that EPIC allowed to use a company vehicle to commute to their work sites. My understanding is that, under the law, commute time is not compensable. The Plaintiff had the option of either taking mass transit, or using a company vehicle for his convenience, to commute to his assigned work site in Far Rockaway. He chose to utilize the company vehicle. He cannot now seek to be compensated because EPIC gave him the use of a company vehicle for his own convenience.

6

22. I hereby declare under the laws of the United States of America that the foregoing is true and correct.

Dated: New York, New York
       February 12, 2016

SELWYN FALK

7

Exhibit "A"

FORM P-65 (REV. 1/07)



**EPIC SECURITY CORP. • 2067 Broadway, NY, NY 10023 • (212) 580-3434**

PERMANENT ASSIGNED OFFICER ID#: 18044
Name: Williams, David

## SECURITY OFFICER DIRECTIONS TO WORKSITE

**CLIENT NAME (SITE NAME):** DAYTOP VILLAGE

**ADDRESS OF WORKSITE:** 316 BEACH 65 STREET   1561

FAR ROCKAWAY, N.Y. 11692

**SUBWAY AND/OR BUS DIRECTIONS TO WORK:**

A TRAIN TO ROCKAWAY BLVD., TAKE Q53 BUS TO ROCKAWAY BEACH/BEACH 96 ST, TAKE Q22 BUS TO BEACH CHANNEL/BEACH 67 STREET

**POST ORDERS:** POLICE UNIFORM!
**FIREGUARD** POST!
PATROL FACILITY. IDENTIFY, PREVENT AND REPORT FIRE, SMOKE, OBSTRUCTED ENTERANCES / EXITS. MAINTAIN FIREGUARD AND DAILY LOGS.

BRING FOOD/DRINK. WAIT FOR RELIEF! DO NOT LEAVE SITE! DRESS APPROPIATELY FOR WEATHER.

| SHIFT STARTS | DATE | START TIME | DATE | END TIME | SHIFT ENDS |
|---|---|---|---|---|---|
| MONDAY | | OFF | | : | MONDAY |
| TUESDAY | | OFF | | : | TUESDAY |
| WEDNESDAY | | 12:00 AM | | 8:00 AM | WEDNESDAY |
| THURSDAY | 02/07/13 Start | 12:00 AM | 02/07/13 | 8:00 AM | THURSDAY |
| FRIDAY | | 8:00 AM | | 4:00 PM | FRIDAY |
| SATURDAY | | 4:00 PM | | 12:00 AM | SATURDAY |
| SUNDAY | | 4:00 PM | | 12:00 AM | SUNDAY |

- If your schedule calls for it, you must be able to work Saturday's, Sunday's and Holidays.
- If you decline a work assignment, deemed as misconduct by the employer, EPIC Security Corp, and will result in termination!
- If your work assignment ends for any reason, unless instructed otherwise, you are required to report the next work day to the EPIC office for a paid Office Security Detail assignment.
- If you are going to call out for an "AUTHORIZED ABSENTS", you must notify the EPIC Scheduling Manager during regular daytime business hours at least 24 HOURS in ADVANCE of your scheduled shift(s) for approval.
- If you are calling out SICK or because of an EMERGENCY you must notify the EPIC Dispatcher or Scheduling Manager a MINIMUM of "8 HOURS" before the start of your scheduled shift (You may be required to submit a doctor's note or back-up documentation).
- You must telephone the Dispatcher within FIVE (5) MINUTES of reporting to your job site. You are required to call out to the office dispatcher at the end of your tour.
- If working between the hours of 6:00PM and 6:00AM you must call the Dispatcher every HOUR.
- The EPIC Dispatcher can be reached by your assigned Nextel Two-Way Radio or by calling (212)580-3434 /*(800) 548-3434 (the toll free number does not work from a pay phone).
- *Failure to comply with any or all company regulations may result in loss of pay or disciplinary action up and including termination.*
- See Work Regulations on back of this Form.

I have received and understand the above work order. I have read and understand the job regulations on the back of this form:

Signature of Security Officer: *[signature]*   I.D. #: 18044   DATE: 2/6/2013

Schedule issued by telephone. Supervisor Name: _____ Time: _____ Date: _____

Case 1:15-cv-05610-SDA Document 105-10 Filed 01/26/18 Page 10 of 10
Case 1:15-cv-05610-AKH Document 16-1 Filed 02/22/16 Page 3 of 3
FORM P-65 (REV. 1/07)

# UNIFORMED SECURITY OFFICER WORK REGULATIONS

- While on duty, all EPIC Security Officers must be dressed in a full and proper authorized uniform with NYS Department of State approved badges and insignias. All employees are required to present a neat appearance when on duty. All issued uniforms must be worn pressed and cleaned.

- Wearing a partial uniform at any time is cause for disciplinary action. EPIC employees are not permitted to wear any part of the issued uniform while off-duty except when traveling to and from the worksite. If you are in uniform you must in complete uniform.

- The wearing of headgear other than authorized issued uniform hats is expressly forbidden.

- Facial hair is prohibited except for a neatly trimmed moustache

- You must report for duty on time. Unexcused lateness is cause for disciplinary action including possible termination of employment. You are required to contact the dispatcher if you are running late.

- If calling out due to illness or other emergencies you must notify the EPIC Scheduling Manager or Dispatcher. 8 hours advance notification is required.

- Failure to report for work without notification and authorization is cause for disciplinary action including termination of employment.

- A refusal to perform your work duties without a valid reason is cause for disciplinary action including termination of employment.

- Employees are required to obey company directives issued by their supervisor or manager. A refusal to obey a supervisor's reasonable directive or a lack of respect directed toward that supervisor will result in disciplinary action up to and including termination.

- You must telephone or radio the EPIC dispatcher within five minutes of reporting to your job site. You are required to call out to the EPIC dispatcher at the end of your tour.

- If a CLIENT requests that you stay on site beyond your scheduled shift, you must call to notify the EPIC dispatcher and receive authorization from the EPIC dispatcher.

- You must never leave your post until the end of your scheduled shift or until properly relieved in accordance with the post instructions. If an emergency arises, you must immediately contact the EPIC Dispatch and wait for a relief unless authorized to leave by the EPIC Manager on duty. Abandoning your post is cause for immediate termination of employment.

- All logs must be kept neat and legible. Any falsification of logs or time sheets will result in your dismissal. The logbook is for official business only. Vandalism or disfigurement of a logbook is cause for disciplinary action including possible termination of employment.

- All watchclock rounds must be performed in accordance with the post instructions. Failure to do so is cause disciplinary action, possible termination of employment and/or loss of pay.

- You must never use, possess or be under the influence of drugs or alcohol while on duty. This is cause for immediate termination of employment.

- No visitors, friends, or relatives are ever allowed at the job site. This is cause for disciplinary action including possible termination of employment.

- You are absolutely forbidden to accept or borrow money from an EPIC client or an employee of an EPIC client.

- EPIC employees are forbidden from soliciting money or selling goods (candy, cakes, raffle tickets etc.) on the EPIC premises to EPIC employees or on a client site to clients and/or client employees.

- All EPIC employees agree not to accept any job from a client of EPIC Security Corp. for a period of one (1) year after your termination of employment with EPIC.

- The use of a television, radio or portable electronic entertainment device is strictly forbidden while on duty. Any unauthorized equipment found on site will be removed.

- The personal use of EPIC Direct Connect Radios or CLIENT telephones is strictly prohibited. Violators of this rule will be required to reimburse EPIC or the client for the cost of any unauthorized calls made. In addition, violators will be subject to disciplinary action including possible termination of employment.

- The use of a personal cell phone for any purpose is strictly forbidden while on duty. EPIC employees should not be making or receiving personal calls while on post unless to call emergency services.

- The reading of newspapers, magazines, etc., is strictly forbidden while on duty.

- Sleeping on post is cause for disciplinary action including possible termination of employment. You must be alert at all times.

- Guard post such as booths, desk tops, work counters and EPIC vehicles should be kept uncluttered and completely clean. You are required to clean up at the end of your shift.

- It is the policy of EPIC to cause the arrest and prosecution of any person who engages in criminal activity, if such activity is related to their employment and/or duties of that employment.

- Any violation of Public Law while on duty is considered a violation of company policy and is cause for termination of employment.