UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DAVID WILLIAMS, et. al.                                    Case No.  15-cv-5610 (SDA)

                             Plaintiffs,

                -against-

EPIC SECURITY CORP. and SELWYN FALK,

                             Defendants.
------------------------------------------------------------X

---

## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS

---

CONDON CATINA & MARA, PLLC
55 Old Turnpike Road, Suite 502
Nanuet, New York 10954
(845) 627-8500

*Attorneys for Defendants*

On the Brief:

Laura M.  Catina (LC2998)
Brian K.  Condon (BC4683)

# **TABLE OF CONTENTS**

**Page(s)**

PRELIMINARY STATEMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................... 2

ARGUMENT .................................................................................................................... 8

      A.     EPIC SHOULD NOT BE PENALIZED GIVEN THE
             LACK OF SUCCESS COMPARABLE TO THE AMOUNT
             SOUGHT BY PLAINTIFFS ................................................... 8

      B.     THE TIME RECORDS .................................................... 11

      C.     THE RATES REQUESTED BY PLAINTIFFS' COUNSEL
             ARE BEYOND WHAT IS TYPICAL FOR FLSA
             LITIGATORS IN THIS DISTRICT .................................................... 13

      D.     PLAINTIFFS' REQUEST FOR COSTS ......................................... 14

CONCLUSION ............................................................................................................... 15

(i)

# TABLE OF AUTHORITIES

## CASES

**Page(s)**

*Barfield v. New York City Health & Hosps. Corp.,*
   537 F.3d 132, 140 (2d Cir. 2008)...............................................................................8

*Black v. Nunwood, Inc.,* 2015 WL 1958917 (S.D.N.Y. Apr. 30, 2015) .........................13

*Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir.1997)..........................................................9

*Castellanos v. Mid Bronx Cmty Hous. Mgmt. Corp.,*
   2014 WL 2624759 (S.D.N.Y. June 10, 2014) ........................................................14

*Farrar v. Hobby,* 506 U.S. 103, 113-14, 113 S. Ct. 566, 574 (1992)...............................8

*Gonzalez v. Scalinatella, Inc.,* 112 F.Supp. 3d 5 (S.D.N.Y. 2015)..................................13

*Kassim v. City of Schenectady* ...........................................................................................8

*Kim v. Kum Gang, Inc.,* 2015 WL 3536593 (S.D.N.Y. 2015) .........................................13

*Mendez v. Radec Corp.,* 907 F.Supp.2d 353 (W.D.N.Y. 2012) .......................................9

*Velasquez v. Digital Page, Inc.,* 124 F.Supp.3d 201 (E.D.N.Y. 2015).............................9

## STATUTES

### FEDERAL

28 U.S.C. §§201, *et. seq* ...................................................................................................8

### STATE

N.Y. Lab. Law §§651, *et. seq.* ..........................................................................................8

## PRELIMINARY STATEMENT

Defendant, EPIC Security Corp. (hereinafter "EPIC"), respectfully submits this Memorandum of Law in opposition to Plaintiffs' motion for attorneys' fees and costs. As the claims against Defendant Selwyn Falk were dismissed, this Memorandum is only submitted on behalf of EPIC. As set forth herein, the amount of attorneys' fees sought by Plaintiffs' counsel should be reduced to ten percent (10%) of the amount sought, which is reflective of the level of success achieved by them in this case, and the hourly rates should be adjusted to what is typically awarded to FLSA litigators in this District.

This case has no doubt been contentious and litigated zealously for almost four years now. While the attorneys have maintained civility with each other and have worked cooperatively together throughout the duration of this litigation, the motion for attorneys' fees filed by Plaintiffs reads as if Defendants did nothing but cause delay over the four years and failed to engage in good faith settlement negotiations. This could not be further from reality. In fact, Plaintiffs continuously demanded an extraordinary amount of money to settle this case, with a named Plaintiff who ultimately recovered nothing because he was not entitled to damages (which was EPIC's position from the beginning), as well as several other opt-in Plaintiffs who dropped out of the case once this case approached trial and they faced having to actually testify at trial.

As set forth herein, Defendants sought to settle this case beginning in September, 2016, not at the urging of Plaintiffs' counsel. They entered the mediation willing to pay every penny that they calculated as potential damages, in good faith, because of the potential losses they could incur if the case proceeded further. But, faced with a settlement demand that was thirteen (13) times what they had calculated as potential damages based upon the payroll records, and ultimately ten (10) times what was awarded by the Court after trial, there was no negotiation to be had. Thus,

1

we proceeded accordingly and defended against the claims that Defendants strongly believed had no merit.

We note that we have included what unfolded in our settlement negotiations because it is relevant to the Court's determination as to the reasonableness of the amount of fees requested, per the case law cited herein, and we must address the Plaintiffs' claim that settlement negotiations were had at the urging of Plaintiffs and that EPIC did not negotiate in good faith.  Both statements are not accurate.

For the reasons set forth herein, Plaintiffs' claim for attorneys' fees is excessive and should be reduced accordingly based upon how this litigation unfolded and the level of success (or lack thereof) that was achieved by them in this case.

## STATEMENT OF FACTS

Plaintiffs filed this lawsuit in July, 2015. [ECF No. 1-3].   Declaration of Laura M. Catina, ¶7.   After the initial pleadings stage, we appeared before Judge Hellerstein for our Initial Conference on January 8, 2016.   At that time, the named Plaintiff was David Williams.   Since the beginning of this litigation, EPIC maintained that it provided Williams with an EPIC vehicle to travel to the Daytop site in Far Rockaway because of the conditions resulting from Hurricane Sandy.   For that reason, and because there was not a class of people that would have been similarly situated to Williams, EPIC would not consent to conditional certification.   Catina Declaration ¶8.

Plaintiffs moved for certification on January 21, 2016. [Dock. No. 13].   Catina Declaration ¶9.   We argued that Williams was offered the vehicle in lieu of using mass transit because the system was not functioning due to Hurricane Sandy.   There was no class of employees that would have been similarly situated to him.   Catina Declaration ¶9.   Judge Hellerstein agreed and denied the motion without prejudice. [ECF No. 20].   We note that this Court ultimately concluded, after

2

Williams testified that Far Rockaway, where Daytop Village was located, was adversely affected by damage from Hurricane Sandy, that when Williams reported to Daytop, he always drove a vehicle there, whether his own or EPIC's vehicle. ECF No. 189, Opinion and Order, p. 47.  To facilitate him getting to the site, EPIC offered a company vehicle for his use.  *Id.*  This is the claim upon which this case was initially based and the reason that EPIC defended the case so vigorously – his claim was completely without merit.

After the motion to certify was denied, limited discovery ensued and ultimately, once we determined that there were other guards that drove an EPIC vehicle to and from their worksites, even though they were separate and apart from the issues surrounding why Williams drove to the site in Far Rockaway, EPIC agreed to conditional certification.    Throughout the course of discovery, EPIC produced in excess of 30,000 pages of documents.  Catina Declaration ¶10.

In September, 2016, we began engaging in settlement discussions with Plaintiffs' counsel. EPIC was eager to try to settle this case because, even at that time, its legal fees were mounting and there was no end in sight if we did not settle the case.  Catina Declaration ¶11.  At all times, EPIC engaged in settlement discussions in good faith.   In an email from Scott Simpson on September 28, 2016, for example, he noted that, "despite our productive settlement discussions" we would have to move forward with Henry Cullen's deposition.  A copy of the email is annexed to the Catina Declaration as Exhibit **"A"**.  EPIC still wanted to try to settle the case at this point. I had several meetings and telephone calls with EPIC on this issue at that time regarding how to reach a resolution in this case.

In an email to Mr. Simpson on October 19, 2016, I stated the following:

Although there have been discovery issues on EPIC's end, I obviously disagree
with your characterization of why this has occurred. At the end of the day, the
Plaintiff's damages amount to less than $1,000 – he worked for EPIC for 3 weeks.
We still believe that this is a case that should be settled, rather than continuing to
spend legal fees on a claim where the legal fees are more than 40 times what the
Plaintiff's damages are.

Catina Declaration ¶12.

In response, Mr. Simpson stated that they were still open to settlement discussions, and
"perhaps once a collective is conditionally certified we could have a better understanding of the
parameters of a settlement." Catina Declaration ¶13.

EPIC continued its desire to try to settle this case when we agreed to mediation in March,
2017. The mediation was ultimately conducted on May 25, 2017. In preparation for the mediation,
and in an effort to try to settle the case, the parties agreed to exchange limited discovery regarding
the Plaintiffs that had opted in to the case. Catina Declaration ¶14. EPIC provided Plaintiffs with
payroll records for each opt-in and prepared a damages spreadsheet which detailed EPIC's
calculation as to the potential damages for each opt-in Plaintiff. Although EPIC still maintained
that Plaintiffs were not entitled to any damages, it calculated what the maximum would be based
upon its payroll records. Catina Declaration ¶15. The payroll records provided prior to the
mediation were the same records that were entered into evidence at trial. The information did not
change.

In its spreadsheet, Defendant listed the following Plaintiffs as not entitled to any
compensation because they did not drive a vehicle or because the vehicle was stored at the site the
particular guard was assigned to: Anthony Barnes, Owen Burgess, Jimmy Butler, Shakiema
Cadora, Aronolph Henriques, Kimbline Hunter, Joseph Lewis, Starlyn Montan, Michael Mitchell,

Michaelangelo Moulton, Justin Olmeda, Jacqueline Ortiz, Benjamin Rosario, Pindewinde Sawadogo, Jonathan Segura, Winston Synaker III, Saul Veliz, and David Williams.   We note that the only Plaintiffs on this list who ultimately recovered anything are Michaelangelo Moulton, Winston Synaker III and Saul Veliz.   Catina Declaration ¶16.

For the remaining Plaintiffs, EPIC calculated the total amount of potential damages to be $51,768.68.   During the mediation, EPIC offered this amount in an attempt to settle the case. Dr. Mark Lerner attended the mediation with Selwyn Falk, as well as Joseph DiVittorio, on behalf of EPIC, and they came prepared with payroll records, as well as the relevant statutes and case law, in an attempt to have a reasonable settlement discussion about how to resolve the case.   Those efforts turned out to be fruitless.   Catina Declaration ¶17.

Plaintiffs came into the mediation claiming that the damages amounted to $322,634.52, plus liquidated damages of $322,634.52, for a total of $645,269.05.   That number did not include attorneys' fees, for which they demanded $110,000.   Catina Declaration ¶18.   Faced with this demand, there was no way for EPIC to negotiate a settlement.   There was no good faith negotiation to be had during the mediation because the Plaintiffs' numbers were simply too high.   This case could have ended at that time for an amount close to what was ultimately awarded by the Court after three and a half years of litigation and a six (6) day trial.   Catina Declaration ¶6.

At that time, it became clear that a settlement in this case was virtually impossible. Therefore, we continued with discovery and deposed some of the named and opt-in Plaintiffs. Catina Declaration ¶20.   One of the opt-in Plaintiffs that had the highest amount of damages on the spreadsheet prepared for mediation was Aronolph Henriques.   At the mediation, it was claimed that the amount of damages due to Henriques was $11,700.00, doubled for liquidated damages, for a total of $23,400.00.   It was also claimed that he drove an EPIC vehicle to and from his site for

fifty-two (52) weeks, five (5) days per week, three (3) hours per day. Knowing that this was false, and knowing that Henriques was assigned to the Deepdale site which, as Defendants' established at trial, had a car on site twenty-four (24) hours per day, we chose to depose him. When we deposed Henriques, on August 8, 2017, he testified and confirmed that he commuted from his home to the Deepdale site and did not drive an EPIC vehicle to and from the site every day. An EPIC vehicle was stored on site, which was the vehicle that he used to patrol the site.

It was clear at that time that Henriques did not have any damages, let alone $23,400.00. Yet, he remained in the case until shortly before trial when he would have to appear and testify. Catina Declaration ¶22.

As the Court determined after trial, the guards that were assigned to a site where an EPIC vehicle was stored there and used by those guards to patrol the site were not entitled to compensation. Plaintiffs should never have proceeded with these claims, or claims for any other guards that worked at this site, as it became clear a year and half before trial that the vehicle they used to patrol the site was stored at the site. Catina Declaration ¶23. We did not receive an updated damages calculation at any time in between the mediation and trial. Catina Declaration ¶24.

For those Plaintiffs that were awarded damages by the Court, the damages were much lower than the numbers that had been previously calculated by Plaintiffs. For example, for Winston Synaker, III, $7,434.00 was originally claimed. The Court awarded $180.00. For James Foster, $17,514.00 was claimed, but only $1,190.00 was awarded by the Court. This pattern repeats itself for virtually all of the opt-in Plaintiffs. Catina Declaration ¶8. Catina Declaration ¶25.

Towards this end, on July 12, 2017, Plaintiffs filed a motion to amend their Complaint to add two named Plaintiffs, Hilburn Walker and Adrian Brown, and to add Selwyn Falk as an individual defendant.  EPIC consented to the addition of Hilburn Walker and Adrian Brown as named Plaintiffs, but opposed the portion of the motion seeking to add Selwyn Falk as a defendant in this case.  Catina Declaration ¶26.  Selwyn Falk should never have been named as a defendant in this case and it is unclear why Plaintiffs chose him as the individual defendant.  Although the motion to amend was granted, it was always EPIC's position that, based upon his deposition testimony, it was clear that Falk should not be considered an "employer" under the FLSA or NYLL.  Once he was named as a defendant we had to produce him, again, for a further deposition, and engage in additional discovery.  As the Court ultimately found, however, Falk does not qualify as an "employer".  Had Plaintiffs not asserted the meritless claims against him in the first place, we would not have had to engage in additional motion practice and could have avoided additional discovery.  Catina Declaration ¶27.

Regarding the Plaintiffs' characterization of what occurred during the notice period, Plaintiffs note that Defendants "never attempted to narrow the class definition to include those security guards who drove to "RMP" sites.  It is unclear why this is mentioned, given the fact that narrowing the class to guards who drove to "RMP" sites would have excluded their named Plaintiff, David Williams, which they never would have agreed to.  Thus, any suggestion to narrow the class in this way would have been futile.   Catina Declaration ¶28.

7

## ARGUMENT

**A.    EPIC Should not be Penalized Given the Lack of Success
Comparable to the Amounts Sought by Plaintiffs**

Plaintiffs seek attorneys' fees and costs pursuant to the FLSA and NYLL provisions which provide for the recovery of attorneys' fees to the prevailing party in an action pursuant to these statutes.  *See* 28 U.S.C. §§201, *et. seq.* and N.Y. Lab. Law §§651, *et. seq.*   Defendants cannot dispute that the Court rendered an Opinion and Order in favor of certain Plaintiffs after a six (6) day bench trial.  Citing *Farrar v. Hobby,* 506 U.S. 103, 113-14, 113 S. Ct. 566, 574 (1992), Plaintiffs argue that "[t]he degree of the plaintiff's success does not affect eligibility for a fee award."  While the degree might not affect *eligibility*, it is the degree of the plaintiff's overall success that goes to the reasonableness of a fee award.  *Id.*  Indeed, "the most critical factor" in determining the reasonableness of a fee award "is the degree of success obtained."  *Id.*  Even if the lodestar method is used to calculate the amount of attorneys' fees sought by Plaintiffs, after determining the lodestar figure, the district court can invoke its authority to adjust the lodestar to reflect a number of factors, including the results obtained.  *See Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 140 (2d Cir. 2008)("In considering Barfield's fee challenge, we are mindful of the Supreme Court's observation that 'the most critical factor' in a district court's determination of what constitutes attorneys' fees in a given case 'is the degree of success obtained' by the plaintiff.")

A district court's assessment of the "degree of success" achieved in a case is not limited to inquiring whether a plaintiff prevailed on individual claims.  *Id.; see also Kassim v. City of Schenectady*, 415 F.3d at 254 (2d Cir. 2005). Both "the quantity and quality of relief obtained," as compared to what the plaintiff sought to achieve as evidenced in her complaint, are key factors in

8

determining the degree of success achieved. *Barfield, supra; see also Carroll v. Blinken*, 105 F.3d 79, 81 (2d Cir.1997). Indeed, this comparison "promotes the court's 'central' responsibility to 'make the assessment of what is a reasonable fee under the circumstances of the case.'" *Barfield, supra; see also Farrar v. Hobby,* 506 U.S. at 114-115, 113 S. Ct. 566.

Towards this end, Courts have found that early settlement offers by Defendants are a relevant factor to what constitutes a reasonable fee and reflects on the "degree of success" obtained, a critical factor under the *Barfield* analysis. *See Velasquez v. Digital Page, Inc.,* 124 F.Supp.3d 201 (E.D.N.Y. 2015)(attorneys' fees reduced by 50%); *see also Casper v. Lew Lieberbaum & Co.,* 182 F. Supp.2d 342 (S.D.N.Y. 2002)(attorneys' fees reduced by 83.3%); *Mendez v. Radec Corp.,* 907 F.Supp.2d 353 (W.D.N.Y. 2012)(Attorneys' fees reduced by 70% where court determined that Plaintiffs could have settled the case much earlier in the lawsuit, incurring significantly less attorneys' fees and costs, except for their insistence on a settlement in the millions of dollars range – well before they had incurred substantial fees. The case settled for far less than Plaintiffs originally requested and the amount of attorneys' fees sought far exceeded the settlement amount.)

Here, this case was initially filed as a Rule 23 class action. [ECF No. 1-3]. The claims asserted in the Complaint were as follows: (1) Fair Labor Standards Act, including failure to pay overtime and failure to keep appropriate and accurate payroll and time records required by federal law; (2) New York Labor Law: Unpaid Overtime Wages; and (3) New York Labor Law: Spread of Hours Wages.

Plaintiffs' Amended Complaint asserted the following claims: (1) Fair Labor Standards Act, including failure to pay overtime and failure to keep appropriate and accurate payroll and time records required by federal law; (2) New York Labor Law: Unpaid Overtime Wages; (3) New

9

York Labor Law: Spread of Hours Wages; and (4) New York Labor Law: Wage Statements. [ECF No. 94]. The Amended Complaint also added Selwyn Falk as a Defendant.

Plaintiffs' Second Amended Complaint asserted only two claims: (1) Fair Labor Standards Act, including failure to pay overtime and failure to keep appropriate and accurate payroll and time records required by federal law; (2) New York Labor Law: Unpaid Overtime Wages.

In addition, Plaintiffs sought liquidated damages against EPIC and Selwyn Falk.

Thirty-eight (38) individuals opted in to the case. [ECF No. 41-74, 80, 81, 82]. At the conclusion of the trial, there were twenty-three (23) named and opt-in Plaintiffs remaining, and seventeen (17) of those were awarded damages. The original named Plaintiff, David Williams, whose claim was the basis for this entire case, was not awarded any damages and his testimony on some issues was found not to be credible.

In addition, the Court dismissed the claims against Selwyn Falk and denied Plaintiffs' claim for liquidated damages.

This case ultimately proceeded as a collective action, although it was originally filed as a class action. After the parties agreed upon conditional certification as a collective action, Plaintiffs did not seek to have the case certified as a class. This was presumably because Judge Hellerstein indicated that he would not grant such a motion. Thus, it proceeded to trial as a collective action.

Although seventeen out of the original thirty-eight Plaintiffs were awarded damages, the damages awarded were significantly less than what was originally sought. For example, the original numbers provided to us for Winston Synaker, III, was $7,434.00. The Court awarded $180.00. For James Foster, $17,514.00 was claimed, but only $1,190.00 was awarded by the Court. This pattern repeats itself for virtually all of the opt-in Plaintiffs. Catina Dec. ¶25.

The amount awarded by the Court, exclusive of pre-judgment interest, was $66,716.00. This is ten (10) times less than the amount originally sought by Plaintiffs.  A year and seven months before the trial, EPIC offered to pay the full amount that it had calculated as potential damages, which was $51,768.68.  Had the Plaintiffs' settlement position not been so excessive, especially given their admission that they were aware of several different scenarios in terms of damages, this case could have been resolved long ago.  Instead, they maintained extraordinary numbers, which strengthened EPIC's resolve to defend and protect its business, rather than encouraging a settlement.

Ultimately, Plaintiffs did not achieve certification as a class, dropped two of their claims, the claims against Selwyn Falk were dismissed, and the Court denied their request for liquidated damages.  Plaintiffs ended up with an award ten times less than what was originally sought and the fees should be adjusted accordingly.

## B.    The Time Records

In addition to the hours spent preparing a spreadsheet with numbers that were completely inflated in preparation for the mediation, there were several hours spent on the Affidavits and Declarations, prepared for trial, which were virtually identical.  Prior to the trial, the Court ordered that each Plaintiff was to fill out and sign a Questionnaire/Declaration, with specific questions that were approved by the Court.  Plaintiffs also filed Affidavits.  During trial, it became clear that much of the language contained within the Declarations and Affidavits of the Plaintiffs were virtually identical.  Thus, the time entries for preparing the Declarations and Affidavits are unreasonable.

For example, the time entered by Mr. Simpson for these documents is as follows:

| 11/26/18 | Meeting with Warren Richardson to assist him in preparing affidavit and questionnaire. | 1.50 |
| 11/26/18 | TC w/ Princess L-W re: testimony for her affidavit. | .60 |
| 11/26/18 | Meeting w/ Reece; assist in completing affidavit + questionnaire. | 2.60 |
| 11/28/18 | TC with Deneice Martin re: testimony; assist her in completing affidavit and questionnaire. | 1.00 |
| 11/29/18 | TC w/ Princess Logan-Williams (assisting w/ written testimony), email to client. | .80 |
| 11/29/18 | Meeting w/ Mitchell; assist w/ preparation of written testimony. | .80 |
| 11/29/18 | TC w/Shakiema re: preparing her written testimony (aff and questionnaire) | .90 |
| 11/30/18 | Meeting w/ Roger David; assist w/ written testimony. | 1.20 |
| 12/3/18 | Meeting w/ Michael Hurst; assist in drafting written testimony. | 2.40 |
| 12/4/18 | Meeting w/Todd Cunningham; assist with his preparation of written testimony. | 1.10 |
| 12/4/18 | TC w/ Tasha Hollis; assist her in preparing affidavit and questionnaire. | 1.20 |

As the Affidavits and Declarations of the Plaintiffs were virtually identical, with some paragraphs being word for word, in addition to the fees being reduced, the foregoing hours should be reduced, as well.

**C.    The Rates Requested by Plaintiffs' Counsel are Beyond what is
Typical for FLSA Litigators in this District**

Plaintiffs seek the following hourly rates in their motion for attorneys' fees: (1) $600 per hour for Bruce Menken, Esq.; (2) $400 per hour for Scott Simpson, Esq.; and (3) $300 per hour for Marielle Moore, Esq.  The foregoing rates are in excess of what is typically awarded to FLSA litigators in this District.

Several courts have deemed a top rate of $450.00 per hour as the maximum for a senior law firm attorney in FLSA type cases.  *See Gonzalez v. Scalinatella, Inc.,* 112 F.Supp. 3d 5 (S.D.N.Y. 2015); *Kim v. Kum Gang, Inc.,* 2015 WL 3536593 (S.D.N.Y. 2015); *Easterly v. Tri-Star Transp. Corp.,* 2015 WL 337565 (S.D.N.Y. Jan. 23, 2015).  In *Gonazlez,* the Court recognized that it had awarded $600.00 per hour in other cases, but that it was beyond that which was typical for FLSA litigators in this District.  The Court further stated that in *Kim v. Kum Gang, Inc.,* 2015 WL 3536593 (S.D.N.Y. 2015), the attorney for whom it approved $600.00 per hour worked for Shearman & Sterling, which the Court noted "has a more substantial overhead than other small or midsize firms litigating FLSA cases."  Moreover, the fee application in that case was unopposed and counsel there had achieved remarkable success on behalf of their clients – a complex multi-plaintiff FLSA case where the court entered a judgment in excess of $2.5 million.  *Gonazlez,* 112 F.Supp. 3d 5 (S.D.N.Y. 2015).  The Court noted that a rate of $450.00 per hour was still at the high end of that which is generally granted in this District.  *Id.*  In line with these cases, Mr. Menken should not be awarded a rate in excess of $450.00 per hour.

Towards this end, the Court in *Gonzalez* noted that "courts in this district have found that $300 is an appropriate hourly rate for a senior associate with at least eight years' experience."  *Id.; see also Black v. Nunwood, Inc.,* 2015 WL 1958917 (S.D.N.Y. Apr. 30, 2015).  Plaintiffs' counsel

in *Gonzalez* requested a rate of $350 per hour for an attorney who had ten years of experience and the Court agreed with and awarded that rate.  The Court should award the same rate here for Mr. Simpson.

Lastly, rates in excess of $225 per hour are reserved for FLSA litigators with more than three years' experience.  *Id.*  Here, Ms. Moore graduated law school in 2014.  Presumably, she was not admitted until late 2014 and has been practicing for four years.   Courts have approved rates of $250 per hour for associates who, at the start of a lawsuit, had between three and six years' experience.  *See Castellanos v. Mid Bronx Cmty Hous. Mgmt. Corp.,* 2014 WL 2624759 (S.D.N.Y. June 10, 2014).   Thus, the maximum rate awarded to Ms. Moore should be $225 per hour.

**D.      Plaintiffs' Request for Costs**

Plaintiffs include a request for costs that lists their expenses with no backup documentation. For example, included within their expenses is a charge of $5,933.71 on April 20, 2017 for "Acro-Duplication, Assembly and Mailing of consent letters to EPIC Security employees on 12/23/16. Without any backup, there is no way to confirm the amount of this particular cost.  The only cost we can confirm is the payment for the mediation because EPIC paid the same cost.  Other than that, there is no backup for any of the costs sought by Plaintiffs.

14

## <u>CONCLUSION</u>

Based upon the foregoing, the amount of attorneys' fees and costs sought by Plaintiffs' should be reduced according to the level of success that was achieved in this case, which would be ten percent (10%) of the total amount sought.  Since Plaintiffs did not achieve certification as a class, dropped two of their claims, the claims against Selwyn Falk were dismissed, the Court denied their request for liquidated damages and Plaintiffs ended up with an award ten times less than what was originally sought, any award of attorneys' fees should be reduced accordingly.  In addition, the rates sought should be reduced to reflect the rates typically awarded to FLSA litigators in this District.

Dated: March 22, 2019                    Respectfully submitted,


                                          CONDON CATINA & MARA, PLLC

                                          By: __s/ Laura M. Catina_____
                                               Laura M. Catina
                                               Brian K. Condon