UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌──────────────────────────────────┐
│ USDC SDNY                         │
│ DOCUMENT                          │
│ ELECTRONICALLY FILED              │
│ DOC #:_____            │
│ DATE FILED:__03/25/2019__         │
└──────────────────────────────────┘
```

Williams, et al.,

                                        Plaintiffs,

            -against-

Epic Security Corp. and Selwyn Falk,

                                        Defendants.

1:15-cv-05610 (SDA)

<u>OPINION AND ORDER</u>

STEWART D. AARON, United States Magistrate Judge:

<u>INTRODUCTION</u>

Plaintiffs filed this action asserting claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the New York Labor Law ("NYLL"), Article 6, § 190, *et seq*. Plaintiffs alleged that their employer, Defendant EPIC Security Corp. ("EPIC") and its Vice President, Defendant Selwyn Falk ("Falk") (collectively, the "Defendants"), failed to pay Plaintiffs for the time they spent driving to and from certain worksites, which time they alleged was compensable. Following a bench trial, I generally found that, for those Plaintiffs who worked at sites which required that a radio motor patrol vehicle ("RMP") be present onsite, and who drove an RMP to and from those sites, their driving time was compensable. I thus awarded to 17 of the 23 Plaintiffs remaining in the case at the time of trial damages as specified in my Opinion and Order, dated February 22, 2019. *Williams v. Epic Sec. Corp.*, No. 15-CV-05610 (SDA), 2019 WL 858678, at *24 (S.D.N.Y. Feb. 22, 2019). Further, I denied Plaintiffs' claims for liquidated damages under either the FLSA or the NYLL, and denied Plaintiffs' claims against Defendant Falk. *Id*. Finally, I permitted Plaintiffs to file an application for attorneys' fees and costs. *Id*.

Presently before the Court is Plaintiffs' motion for attorneys' fees and costs in an amount totaling $414,720.36 (ECF Nos. 194-96), and Defendants' opposition to this motion. (Opp. Mem., ECF Nos. 197-98.) For the reasons set forth below, I hereby GRANT IN PART Plaintiffs' motion for fees and costs, albeit in a reduced amount.

## LEGAL STANDARDS

Under the FLSA and NYLL, a prevailing party in an employment dispute is entitled to recover reasonable attorneys' fees and costs. *See* 29 U.S.C. § 216(b); NYLL §§ 198(1-a), 663; *accord Young v. Cooper Cameron Corp*., 586 F.3d 201, 208 (2d Cir. 2009) ("The FLSA provides that a court 'shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.'"). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

While a district court retains discretion to determine what constitutes a reasonable fee, "this discretion is not unfettered." *Millea v. Metro-North R.R. Co*., 658 F.3d 154, 166 (2d Cir. 2011). "[W]hen a prevailing party is entitled to attorneys' fees, the district court must abide by the procedural requirements for calculating those fees articulated by [the Second Circuit] and the Supreme Court." *Id*. "Both [the Second Circuit] and the Supreme Court have held that the lodestar — the product of a reasonable hourly rate and the reasonable number of hours required by the case — creates a 'presumptively reasonable fee.'" *Id*. (citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) and *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 U.S. 182, 189-90 (2d Cir. 2008)). This approach is intended to "produce[] an award that *roughly* approximates the fee that the prevailing attorney would have received if he or she had

been representing a paying client who was billed by the hour in a comparable case." *Perdue*, 559 U.S. at 551 (citations omitted; emphasis in original); *see also Bergerson v. N.Y. State Office of Mental Health*, 652 F.3d 277, 289-90 (2d Cir. 2011) ("A reasonable hourly rate is what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively") (internal quotation marks and citations omitted).

A reasonable rate is generally the "prevailing market rate[] for counsel of similar experience and skill to the fee applicant's counsel." *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005). In deciding what constitutes a reasonable rate, a court may consider "rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Id.* "The relevant community to which the court should look is the district in which the case was brought." *Marisol A. ex rel. Forbes v. Giuliani*, 111 F. Supp. 2d 381, 386 (S.D.N.Y. 2000).

In calculating the reasonable number of hours expended "the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'" *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley*, 461 U.S. at 434). In so doing, the court "may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985). Finally, "'the most critical factor' . . . 'is the degree of success obtained' by the plaintiff." *Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)). Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount," even if plaintiff's "claims were interrelated, nonfrivolous, and

raised in good faith." *Hensley*, 461 U.S. at 436 ("Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained.").

"Hours spent on unsuccessful fee-shifting claims . . . must be excluded from the reasonable hours spent on the case when calculating the lodestar." *Millea*, 658 F.3d at 168; *see also Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999) (excluding "hours dedicated to severable unsuccessful claims") (citation omitted). Attorneys' fees may be awarded for unsuccessful claims as well as successful ones, however, where they are "inextricably intertwined and involve a common core of facts or are based on related legal theories." *Quaratino*, 166 F.3d at 425 (internal quotation marks and citations omitted).

Courts in this Circuit have recognized a district court's authority to make across-the-board percentage cuts in hours, as opposed to an item-by-item approach, to arrive at the reasonable hours expended.[1] These across-the-board cuts are based in part on the degree of success achieved by plaintiffs. *See*, *e.g.*, *Leevson v. Aqualife USA, Inc.*, 296 F. Supp. 3d 503, 526 (E.D.N.Y. 2017) ("The court has considered plaintiffs' affirmation in support of attorney's fees and finds that plaintiffs' hours and rate are reasonable, but must be reduced to reflect plaintiffs' degree of success. Because the FLSA claims comprised roughly half of plaintiffs' counsels' work in this case, the fees are reduced by one-half"); *Bond v. Welpak Corp.*, No. 15-CV-2403 (JBW) (SMG), 2017 WL 4325819, at *7 (E.D.N.Y. Sept. 26, 2017) ("In light of plaintiffs' quite limited success at trial, I find

---

[1] This percentage reduction approach is consistent with Supreme Court authority. *See Hensley*, 461 U.S. at 436-37 ("The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success.").

that an across-the-board reduction of 25% of the hours for which plaintiffs seek reimbursement is appropriate"), *appeal dismissed* (Apr. 9, 2018); *Kadden v. VisuaLex, LLC*, No. 11-CV-4892 (SAS), 2012 WL 6097656, at *2 (S.D.N.Y. Dec. 6, 2012) (in FLSA case, when facing lack of precision regarding amount of time devoted to issue of liquidated damages, on which plaintiffs did not prevail, reducing plaintiff's counsel's hours billed by 20%); *see also Sanchez v. I&A Rest. Corp*., No. 14-CV-0726 (DF), 2017 WL 2537814, at *6 (S.D.N.Y. May 22, 2017) (imposing fifteen percent reduction).[2]

A court should consider other case-specific variables when determining the amount of attorneys' fees to award, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 187.

---

[2] Courts in other Circuits have taken the same approach. *See, e.g., Rowett v. Wish Wash 2 LLC*, No. 16-CV-81904 (WM), 2018 WL 4869441, at *5 (S.D. Fla. Sept. 20, 2018), *report and recommendation adopted*, No. 2018 WL 4869438 (S.D. Fla. Oct. 5, 2018) (imposing 40% reduction where only one of two plaintiffs prevailed: "Rather than make line-by-line reductions in hours, a court may engage in an across-the-board cut so long as it provides adequate explanation for the decrease'" (citation and internal quotation marks omitted)); *Albers v. Tri-State Implement, Inc*., No. CR. 06-4242-KES, 2010 WL 960010, at *26 (D.S.D. Mar. 12, 2010) ("The court finds that a 50 percent reduction accounts for the amount of time plaintiffs spent on their successful FLSA claims, their degree of success on this claim, and their degree of success in their lawsuit as a whole.").

**APPLICATION**

I.      **Reasonable Hourly Rates**

Plaintiffs seek recovery of attorneys' fees based upon work done by Bruce E. Menken, Scott Simpson and Marielle Moore. Messrs. Menken and Simpson appeared as counsel of record in this case, and Ms. Moore did not.

Mr. Menken, a partner at Beranbaum Menken LLP, has practiced law for 32 years and has litigated and settled numerous so-called "wage-and-hour" cases. (Simpson Decl., ECF No. 195, ¶ 52.) Plaintiffs seek an hourly rate for Mr. Menken of $600, noting that numerous clients have retained him at a $600 hourly rate, and that Judge Patterson of this Court approved a $500 hourly rate for him in 2011. (*Id*. ¶¶ 55-57.)

Mr. Simpson was a criminal defense lawyer for 7 years before joining Beranbaum Menken LLP in October 2015. He was promoted to partner effective January 1, 2018. (Simpson Decl. ¶ 60.) He has litigated "several" class action and FLSA cases since joining the firm. (*Id*. ¶ 64.) He requests an hourly rate of $400, and attaches in support 3 retainer agreements with other clients from 2018, after the date he became a partner. (*Id*. ¶ 59; Simpson Decl., Ex. 2, ECF No. 195-2.)

Ms. Moore is a senior associate at Beranbaum Menken, where she has worked for nearly two years. (Simpson Decl. ¶ 71.) She requests an hourly rate of $300. (*Id*. ¶ 68.) She claims that she has "five years of civil rights experience" (*id*. ¶ 73), but does not appear to have litigated wage-and-hour cases prior to joining the firm. The Court takes judicial notice that, based upon the Court's review of records of the New York State Unified Court System and Florida bar, although Ms. Moore was admitted to practice law in the State of Florida on September 26, 2014,

she was not admitted in New York until September 13, 2017, and was not admitted in the Southern District of New York until December 19, 2017.

Defendants object to the $600 hourly rate sought for Mr. Menken and argue that his hourly rate should be set at $450. (Opp. Mem. at 13.) However, given Mr. Menken's vast experience practicing law and in wage-and-hour cases, the Court finds that his $600 hourly rate is reasonable and is consistent with other cases in this district.[3] *See*, *e.g.*, *Dixon v. Agbai*, No. 15-CV-850 (AT) (AJP), 2016 WL 3702749, at *15 (S.D.N.Y. July 8, 2016), *report and recommendation adopted*, 2016 WL 5660246 (S.D.N.Y. Sept. 28, 2016) ("rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600") (citation omitted); *Powell v. Metro One Loss Prevention Servs. Grp.*, 12-CV-4221 (LAP) (DF), 2015 WL 9287121, at **2-3 (S.D.N.Y. Feb. 5, 2015), *report and recommendation adopted*, 2015 WL 9255338 (S.D.N.Y. Dec. 17, 2015) (setting hourly rate for senior partner in employment case at $650).[4]

Defendants object to the $400 hourly rate for Mr. Simpson and suggest that he be awarded an hourly rate of $350. (Opp. Mem. at 13-14.) The Court agrees with Defendants' suggestion. Mr. Simpson was not a partner during most of the time this case has been pending. He joined Beranbaum Menken in October 2015, with no prior experience in wage-and-hour cases, and started working on this case in January 2016. (Time records, ECF No. 195-3, at 12.) A $350 hourly rate for Mr. Simpson is consistent with the rate awarded in this district to attorneys

---

[3] In ruling on hourly rates that are reasonable, the Court has considered rates awarded in prior cases and the Court's own familiarity with the rates prevailing in this district.

[4] Defendants themselves acknowledge an FLSA case decided in this district in 2015 in which a $600 hourly rate was found to be reasonable. (*See* Opp. Mem. at 13 (citing *Kim v. Kum Gang, Inc.*, Case No. 12-CV-6344 (MHD), 2015 WL 3536593 (S.D.N.Y. June 5, 2015)).)

of similar experience. *See Rosado v. City of N.Y.*, No. 11-CV-4285 (SAS), 2012 WL 955510 at *5 (S.D.N.Y. Mar. 15, 2012) (awarding $350 an hour for an attorney with "at least three years['] experience in the area of civil rights and nine years['] experience in general litigation").

Defendants object to the $300 hourly rate sought for Ms. Moore and suggest that her hourly rate be reduced to $225 per hour, based upon their presumption that "she was not admitted until late 2014 and has been practicing for four years." (Opp. Mem. at 14.) The Court finds that Ms. Moore's hourly rate of $300 is high, given the fact that she was not admitted to practice law in the State of New York until September 13, 2017, and her relative lack of experience in wage-and-hour cases. For the period prior to September 13, 2017, the Court in its discretion reduces her hourly rate to $150, which is consistent with the hourly rate awarded by other courts in this district to law clerks or attorneys not yet admitted to the bar. *See Elisama v. Ghzali Gourmet Deli Inc.*, No. 14-CV-08333 (PGG) (DF), 2016 WL 11523365, at *18 (S.D.N.Y. Nov. 7, 2016) (awarding rate of $120 per hour to "legal clerk" not yet admitted to practice), *report and recommendation adopted*, 2018 WL 4908106 (S.D.N.Y. Oct. 10, 2018); *Ni v. Bat-Yam Food Servs. Inc.*, No. 13-CV-07274 (ALC) (JCF), 2016 WL 369681, at *7 (S.D.N.Y. Jan. 27, 2016) ($120 hourly rate for summer paralegals and law clerks was reasonable); *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 508 (S.D.N.Y. 2012) (awarding hourly rate of $175 to attorney when portion of his work on case was performed as a "law clerk" prior to his admission to the bar). For the period after September 13, 2017, the Court determines Ms. Moore's reasonable hourly rate to

be $275, which is the hourly rate that Plaintiffs assert recently was approved by another court in this district in another wage-and-hour case.[5] (*See* Simpson Decl. ¶ 72.)

## II.     Reasonable Hours

### A.   Hours Recorded

The hours upon which Plaintiffs' motion is based are as follows: (1) 162.45 hours for Mr. Menken; (2) 557.45 hours for Mr. Simpson; and (3) 244.75 hours for Ms. Moore (59.25 hours prior to September 13, 2017 and 185.5 thereafter).[6] (Simpson Decl. ¶ 79.)

The Court carefully has reviewed the time records submitted by Plaintiffs and finds that the entries are for time properly billed, with one exception. The Court finds that some hours billed by Mr. Menken at his $600 hourly rate during the pretrial phase of this case exceed what was "necessary to litigate the case effectively." *See Bergerson*, 652 F.3d at 289-90. The attorney who performed most of the work on this case was Mr. Simpson, who recorded 557.45 hours. (Simpson Decl. ¶ 79.) In addition to Mr. Simpson's hours, Mr. Menken recorded 162.45 hours. (*Id*.) During the pretrial phase of the case, some of Mr. Menken's hours appear to the Court not to have been necessary for the effective representation of Plaintiffs. For example, on June 2, 2016, Mr. Menken spent 2.25 hours, at an hourly rate of $600, doing legal research (a task more appropriately undertaken by an associate) and recording "travel time." (Time records at 2.) Given Mr. Simpson's extensive work on the case, and his litigation experience (*see* Simpson Decl. ¶¶

---

[5] Plaintiffs also seek fees in the amount of $3,750 for work done by Beranbaum Menken's Office Manager. (Simpson Decl. ¶¶ 78-79.) The Court will not award such fees, which are part of the overhead of Beranbaum Menken and not properly chargeable to clients.

[6] Ms. Moore's pre- and post- September 13, 2017 hours were calculated by examining her time entries and separately adding up the hours before and after that date. (Time records at 8-9.)

60-61), the level of involvement of Mr. Menken as a senior partner seems to the Court to have been somewhat greater than necessary for effective representation.

Because the number of "excessive" hours of Mr. Menken is difficult to quantify, the Court takes these hours into consideration when determining the across-the-board percentage reduction that is discussed below.

### B. Degree Of Success

The Court also finds that adjustments need to be made to the hours spent by each of the three plaintiffs' attorneys based upon the outcome of the case, given that the "most critical factor" is "the degree of success obtained." *Hensley*, 461 U.S. at 436. Adjustments are required in two respects. First, the Court makes an adjustment based on the number of prevailing Plaintiffs, as compared to those who did not prevail. Second, the Court makes an adjustment based on the fact that even the prevailing Plaintiffs were not successful on all their claims.

The docket in this case reflects a total of 38 Plaintiffs and opt-in Plaintiffs. Of those 38, 23 went to trial, and 17 of them (45% of the total group (*i.e.*, 17 out of 38)) were prevailing parties. Pursuant to the FLSA and NYLL, recovery of attorneys' fees is available only to those 17. The Court finds it significant that, of the 17 prevailing parties, only 13 (34% of the total group (*i.e.*, 13 out of 38)) recovered more than $300, inclusive of prejudgment interest.[7] (*See* 2/22/19 Op. & Order, ECF No. 189, at 50.)

In addition, the prevailing Plaintiffs did not win on every claim they asserted. The Court ruled against Plaintiffs on their liquidated damages claims, and on their claims against Defendant

---

[7] Four prevailing parties were awarded less than $300: Michael Howie was awarded $53, Deneice Martin was awarded $45, Michael Moulton was awarded $261 and Winston Synaker was awarded $200. (*Id.*) The other 13 prevailing plaintiffs each were awarded more than $1300. (*Id.*)

Falk. The Court also ruled, in part, against those prevailing Plaintiffs who worked at both RMP and non-RMP sites (*e.g.*, Adrian Brown, Roger David, Michael Hurst, Jonathan Reece, Israel Rivera, Jose Vicent and Samuel Wright), given that the Court only ruled in favor of those Plaintiffs to the extent they worked at RMP sites.[8] It also is notable that Plaintiffs dropped two of their claims based upon spread of hours and wage statements (*see* JPTO at 2), which is an additional indicator of Plaintiffs' limited degree of success.

### C.  Across-The-Board Percentage Reduction

It is impossible to say with any precision how much of the time spent by Beranbaum Menken attorneys was devoted to the prevailing Plaintiffs, as opposed to those Plaintiffs who did not prevail. It also is impossible to say with any precision how much of the time spent by those attorneys was devoted to claims that the prevailing Plaintiffs lost or the claims that they dropped. Finally, as noted above, it is difficult to quantify the number of "excessive" hours of Mr. Menken. Thus, the Court finds it appropriate to employ an across-the-board percentage reduction in the hours expended by Plaintiffs' counsel.

In making its determination of the percentage reduction to be used, the Court is guided by the principle of rough justice. "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice,

---

[8] Another measure of the "degree of success" achieved (*Hensley*, 461 U.S. at 436) is the amount of damages recovered. In this case, Plaintiffs recovered a total of $87,146. (*See* 2/22/19 Op. & Order at 50.) However, in the Joint Pretrial Order, Plaintiffs estimated that they would recover a total of $468,000 in damages (plus "almost certainly" no less than $200,000 in attorneys' fees and expenses). (JPTO, ECF No. 124, at 2.) Although, as noted by Plaintiffs (Pls.' Mem., ECF No. 196, at 4), "attorneys' fees need not be proportional to the damages plaintiffs recover," *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 511 (S.D.N.Y. 2011), the Court finds the fact that Plaintiffs here recovered only 19% of what they were seeking to be informative.

not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Errant Gene Therapeutic, LLC v. Sloan-Kettering Inst. for Cancer Research*, 286 F. Supp. 3d 585, 588 (S.D.N.Y. 2018), *affirmed*, No. 15-CV-2044 (AJN) (SDA), 2018 WL 3094913 (S.D.N.Y. June 21, 2018) (citing *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

Here, there are significant factors weighing in favor of a percentage reduction. When this case was commenced in July 2015, the only plaintiff in the case was David Williams, who did not prevail in this case.[9] Judge Hellerstein, the presiding judge at the time, noted in February 2016:

> Class Plaintiff's complaint alleges that he, and other similarly situated employees, were required by their job to report to company headquarters in Manhattan, and required to drive a company car to worksites in other boroughs. Defendant [EPIC] has presented competent proof that workers were not required so to report, but were offered the convenience of a company car in lieu of using the poorly functioning subway system in the aftermath of Hurricane Sandy.

(Text Only Order, ECF No. 20.) It was not until February 2017, after many hours already were billed by Plaintiffs' counsel, that any of the prevailing Plaintiffs formally became part of this lawsuit. (*See, e.g.*, 2/17/17 Consents to Join Class, ECF Nos. 41-73.) And, as discussed earlier, only 45% of the overall Plaintiffs and opt-in Plaintiffs who appeared in this case prevailed (with only 34% recovering more than $300), and even then, did not prevail on all their claims.

The Court recognizes, however, that some work done on behalf of the non-prevailing Plaintiffs was required for the prevailing Plaintiffs to win, including deposing Defendants' witnesses. And, the Court acknowledges Plaintiffs' point that certain of Defendants' conduct during discovery was less than exemplary. (*See* Pls.' Mem. at 8.) In May and June 2016, Defendant

---

[9] *See* 2/22/2019 Op. & Order at 50. The only worksite Williams was assigned to did not require an RMP.

EPIC failed to timely comply with discovery demands, thereby increasing the hours required by Plaintiffs' counsel to pursue their claims.[10]

Defendants argue in favor of a 90% reduction of Plaintiffs' legal fees on the premise, in part, that Plaintiffs' settlement position throughout the case had been "excessive." (*See* Opp. Mem. at 9-11.) In support of this argument, Defendants submit to the Court evidence of settlement discussions between the parties. (Catina Decl., ECF No. 197, ¶¶ 3-6, 11-19; Catina Decl., Exs. A & B, ECF Nos. 197-1 & 197-2.) As an initial matter, the Court finds that Defendants' "reference to the settlement discussions and amounts offered is inappropriate." *See Siracuse v. Program for the Dev. of Human Potential*, No. 07-CV-2205 (CLP), 2012 WL 1624291, at *20 (E.D.N.Y. Apr. 30, 2012) (referring to Fed. R. Evid. 408). Moreover, the Second Circuit has held that "[a]bsent a showing of bad faith, 'a party's declining settlement offers should [not] operate to reduce an appropriate fee award.'" *Ortiz v. Regan*, 980 F.2d 138, 141 (2d Cir. 1992) (citation omitted). In any event, even if the Court were to consider Plaintiffs' prior settlement positions, the Court would not impose across-the-board reductions greater than those set forth below.

---

[10] Some discovery disputes resulted in the issuance of court orders by Judge Hellerstein. (*See* ECF Nos. 25 & 28.)

Taking all the foregoing into account, and considering other case-specific variables,[11] the Court in its discretion implements a 66% reduction[12] in the hours spent by Mr. Simpson and Ms. Moore, and a 70% reduction[13] in the hours spent by Mr. Menken.

The chart below reflects a calculation of the attorneys' fees awarded, by attorney:

| **Name** | **Hourly rate** | **Hours** | **Amount awarded** |
|---|---|---|---|
| Menken | $600 | 49 (162.45 less 70%) | $29,400 |
| Simpson | $350 | 190 (557.45 less 66%) | $66,500 |
| Moore (pre-9/13/17) | $150 | 20 (59.25 less 66%) | $3,000 |
| Moore (post-9/13/17) | $275 | 63 (185.5 less 66%) | $17,325 |
| **TOTAL** | | | **$116,225** |

## III.   Costs

Plaintiffs also seek reimbursement of costs in the amount of $17,095.36. Prevailing parties under the FLSA and NYLL are entitled to "reasonable out-of-pocket expenses incurred by the attorney[s] and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987) (internal quotation marks and citations omitted). Reasonable costs include those "reasonable out-of-pocket expenses incurred by

---

[11] *See Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 187.

[12] This reduction is reflective of the fact that only 34% of the Plaintiffs were prevailing parties who recovered more than $300, and reflects that the Court is awarding to Plaintiffs' counsel fees which are almost twice the 19% recovery rate achieved by Plaintiffs (*see supra* n.8). The hours spent by Beranbaum Menken attorneys that were for the benefit of all the Plaintiffs (both prevailing and non-prevailing), as well as the excess hours spent due to Defendants' discovery conduct, are offset by the limited success achieved by the prevailing Plaintiffs.

[13] Mr. Menken's hours are reduced an additional 4% to take into account the "excessive" hours noted above.

attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998).

Defendants generally object to Plaintiffs' request for costs (except for mediation expenses) based upon the lack of "backup documentation," and Defendants specifically object to a $5,933.71 charge for duplication, assembly and mailing of consent letters to EPIC employees. (Opp. Mem. at 14.) The Court finds that most of the costs and expenses sought by Plaintiffs are reasonable and properly identified (*e.g.*, filing and service fees and transcript costs). (*See* Expense List, Simpson Decl. Ex. 4, ECF No. 195-4.) The Court declines to award the $5,933.71 consent letter-related expense because the Court agrees with Defendants that it is not properly supported. In addition, the Court declines to award the following items: $230 (Dirty Disk Transcript of Selwyn Falk Depo)[14] and $216 (meal expenses and taxi fares).[15] Thus, the Court awards costs to Plaintiffs in the amount of $10,715.65.

## CONCLUSION

For the foregoing reasons, Plaintiffs are awarded $116,225 in attorneys' fees and $10,715.65 in costs, for a total award of $126,940.65. The Clerk of the Court is directed to enter judgment against Defendant EPIC Security Corp. in favor of the Plaintiffs Adrian Brown, Sharon Carr, Roger David, James Foster, Michael Howie, Michael Hurst, Taquesha Lawyer, Princess Logan-Williams, Deneice Martin, Michael Moulton, Jonathan Reece, Israel Rivera, Winton

---

[14] The Court finds this is an excess cost, given the $727.50 charged for the actual transcript. (Expense List at 1.)

[15] The Court finds that the meal expenses and taxi fares (Expense List at 1-2) are not reasonable as counsel does not show that these expenses were necessarily incurred. *See Gutierrez v. Taxi Club Mgmt., Inc.*, Case No. 17-CV-532 (AMD) (VMS), 2018 WL 3432786, at *14 (E.D.N.Y. June 25, 2018).

Synaker, III, Saul Veliz, Jose Vicent, Hilburn Walker and Samuel Wright in the amounts set forth

in the Court's February 22, 2019 Opinion and Order. (2/22/19 Op. & Order, ECF No. 189, at 50.)

The Clerk shall include in the Judgment the award of fees and costs set forth above. The Clerk

also is directed to close this case.

**SO ORDERED.**

DATED:        New York, New York
              March 25, 2019

_____
STEWART D. AARON
United States Magistrate Judge